MARC J. FAGEL (Cal. Bar No. 154425)
MICHAEL S. DICKE (Cal. Bar No. 158187)
SHEILA E. O'CALLAGHAN (Cal. Bar No.)
 (ocallaghans@sec.gov)
JINA L. CHOI (New York Bar No. 2699718)
 (choij@sec.gov)
SUSAN FLEISCHMANN (Cal. Bar No. 207194)
 (fleischmanns@sec.gov)

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, Suite 2600
San Francisco, California 94104
Telephone: (415) 705-2500
Facsimile: (415) 705-2501

E-filing

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>STEVEN T. KOBAYASHI,<br><br>Defendant. | CV11  0981<br><br>Case No. _____<br><br>COMPLAINT |

Plaintiff Securities and Exchange Commission ("Commission") alleges:

### SUMMARY OF THE ACTION

1.  Between 2006 and 2009, financial adviser Steven T. Kobayashi, at the time a broker in the Walnut Creek, California office of UBS Financial Services, Inc., defrauded his customers out of millions of dollars. After establishing a private fund for his customers to invest in life settlement policies, defendant Kobayashi began siphoning money into his own bank account, spending it on luxury cars, prostitutes, and large gambling debts. Then, in an attempt to conceal the fraud, he liquidated his customers' personal securities holdings, using the proceeds to make payments to investors in the private fund. Kobayashi ultimately misappropriated nearly $3.3 million from

COMPLAINT

investors while improperly obtaining millions more by using a line of credit he had purportedly obtained on his investors' behalf.

2. By perpetrating this fraudulent scheme, Defendant Steven Kobayashi violated Sections 10(b) and 15(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b) and 78o(a)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

3. The Commission brings this action pursuant to Sections 21(d) and 21(e) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d) and 78u(e)]. This Court has jurisdiction over this action pursuant to Sections 21(d)(3), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d)(3), 78u(e), and 78aa].

4. Venue in this district is proper pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa] because defendant Kobayashi resides in, and a substantial portion of the conduct alleged in this complaint occurred within, the Northern District of California.

5. Assignment to the Oakland Division of this Court is proper because a substantial part of the events or omissions that give rise to claims alleged in this Complaint occurred in Contra Costa County.

## DEFENDANT

6. Defendant Steven T. Kobayashi ("Kobayashi"), 39, resides in Livermore, California. From August 2004 through September 2009, Kobayashi was a financial adviser at UBS Financial Services, Inc.'s Walnut Creek, CA branch office. He holds Series 7, 63 and 65 licenses.

## OTHER RELEVANT PARTIES

7. **UBS Financial Services, LLC** ("UBS") is a Weekhawken, New Jersey-based broker-dealer and investment adviser registered with the Securities and Exchange Commission ("Commission"). It is a wholly-owned subsidiary of UBS AG, a Zurich and Basel, Switzerland-based financial services firm that trades its common stock on the NYSE under the ticker symbol UBS.

8. **Life Settlement Partners, LLC** ("LSP") is a Pleasanton, California-based limited liability company. LSP was established by Kobayashi in December 2004 as a pooled fund which

invested in life settlement policies, instruments which UBS did not offer. Kobayashi served as LSP's manager from February 2005 to September 2009, when LSP ceased operations.

## FACTUAL ALLEGATIONS

9. Beginning in 1995, Kobayashi worked as a financial adviser for several well-known brokerage firms and quickly built up a book of wealthy clientele. These customers relied heavily on Kobayashi for advice about diversifying and increasing their wealth.

10. Kobayashi performed well for his customers, they recommended him to friends of theirs, and a loyal group ultimately followed him when he began working at UBS in August 2004.

### A. Kobayashi Establishes LSP And Empties Its Bank Accounts

11. In late 2004, several of Kobayashi's UBS customers indicated that they wanted to find a pooled investment fund in which they could invest together. Kobayashi advised these customers that life settlement polices were a sound investment. Life settlements are financial products created when the owner of a life insurance policy sells his policy to a third party. Upon the death of the insured party, the new owner receives the benefit from the life insurance policy.

12. Kobayashi told the customers that he had expertise in identifying potentially lucrative life settlement policies and that he would do so for them if they invested in a pooled fund. Kobayashi claimed he would use their investment funds to purchase and maintain life settlement policies on behalf of LSP. The customers agreed to participate in the investment pool, and Kobayashi established Life Settlement Partners, LLC ("LSP") as a California limited liability company in December 2004. Kobayashi served as LSP's manager and advised LSP regarding which policies to purchase. Kobayashi was to receive compensation from LSP in return for this work. Kobayashi did not disclose his affiliation with LSP to UBS, and his sales of the LSP shares occurred outside the scope and course of his employment with UBS.

13. Upon LSP's inception, four of Kobayashi's UBS customers invested a total of $1.4 million in LSP. The LSP investors anticipated receiving returns on their investments as the life settlement policies matured and LSP received the payouts.

14. For a period of time, Kobayashi ran LSP as a legitimate business. During 2005, LSP purchased approximately 25 life settlement policies and Kobayashi paid their premiums. Several of

1  these policies matured and the proceeds went to LSP. Eventually, however, Kobayashi began to methodically steal LSP's funds for his personal use.

15. In February 2006, Kobayashi began funneling money from LSP into his personal account. Between February 2006 and September 2009 Kobayashi took approximately $1.4 million from LSP in this manner, the bulk of the investors' original stake in LSP. In addition, with the investors as guarantors, Kobayashi established a $3 million line of credit which he told the investors he would use to purchase and maintain life settlement policies and to pay LSP's overhead. Kobayashi improperly drew down most of the line of credit.

16. Kobayashi used the misappropriated funds to pay enormous gambling debts, to hire prostitutes, and to buy luxury cars.

### B. Kobayashi Hides His Theft from LSP By Defrauding His UBS Customers

17. By mid-2007, Kobayashi had run through LSP's liquid assets. He was unable to pay the premiums on LSP's life settlement policies and most of them eventually lapsed. He failed to make payments on the line of credit, and LSP ultimately defaulted on the line. Finally, the LSP investors began making demands for returns on their investments. Kobayashi looked to other sources of money in order to replenish LSP's accounts and hide his activities from LSP's investors. He focused on a handful of his loyal UBS customers.

18. In Fall 2007, Kobayashi spoke to two customers and advised them to liquidate holdings in their UBS accounts in order to purchase what he told them were "investments." These customers believed he would be investing their money in something similar to what their accounts already held and orally authorized the sales transactions.

19. Kobayashi sold equities in these customers' accounts and had the customers sign UBS' wire transfer authorization forms, which transferred the resulting cash to a bank account that Kobayashi controlled. Kobayashi also liquidated holdings in a customer's UBS account without the required authorization and transferred the proceeds out of UBS by forging that customer's signature.

20. In Fall 2008, Kobayashi convinced several customers to liquidate holdings in their corporate 401k accounts and to send the proceeds to another bank account that he controlled. He told

1. these customers that he would be making "investments" on their behalf. Kobayashi instead transferred this money to an unhappy LSP investor seeking returns.

21. Kobayashi also had several UBS customers send money directly to LSP. In Spring 2009 he told one customer he could make a quick return on a loan to LSP. Believing the loan would be repaid within a few months, this customer authorized Kobayashi to liquidate holdings in his UBS account and then signed the authorization to transfer those funds to LSP's bank account. This loan to LSP has not been repaid to the customer.

22. Also in Spring 2009, Kobayashi asked another customer for a personal loan. She authorized him to liquidate holdings in her trust account and signed paperwork transferring the proceeds to LSP. Finally, without authorization, in Fall 2009, Kobayashi liquidated assets in another client's account and forged the customer's signature on wire transfer authorization forms transferring the funds to LSP.

23. Ultimately, Kobayashi obtained approximately $1.9 million from various UBS customers by having them liquidate their securities holdings for purported investments. He transferred the proceeds to LSP investors as supposed returns on their investments and to his personal bank account.

24. In sum, Kobayashi's securities fraud resulted in misappropriation of at least $3.3 million from the LSP investors and his UBS customers.

25. Further, unrelated to any securities transaction, between 2006 and 2009 Kobayashi stole approximately $4 million in additional funds from LSP and from his UBS customers, including funds from the $3 million line of credit.

**C. Kobayashi Resigns from UBS**

26. In September 2009, one of Kobayashi's customers complained to UBS, alleging that Kobayashi had stolen hundreds of thousands of dollars from her account, her son's account, and other client accounts. She claimed that Kobayashi had solicited loans from her and other customers, forged wire transfer documents and lied to customers about what he intended to do with their money.

27. Early the next morning, Kobayashi tendered his written resignation to UBS. UBS subsequently reported his misconduct to the Commission.

## FIRST CLAIM FOR RELIEF

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder)**

28. The Commission realleges and incorporates by reference Paragraphs 1 through 27.

29. By engaging in the acts and conduct alleged above, Kobayashi, directly or indirectly, in connection with the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national security exchange, with scienter: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, including purchasers and sellers of securities.

30. By reason of the foregoing, Kobayashi has violated and, unless restrained and enjoined, will continue to violate Sections 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. §§ 240.10b-5] thereunder.

## SECOND CLAIM FOR RELIEF

**(Violations of Section 15(a) of the Exchange Act)**

31. The Commission hereby incorporates Paragraphs 1 through 30 by reference.

32. Kobayashi has, by engaging in the conduct set forth above, while acting as a broker or dealer, effected transactions in and induced and attempted to induce the purchase or sale of securities when he was not registered with the Commission as a broker or dealer or associated with an entity registered with the Commission as a broker or dealer.

33. By reason of the foregoing, Kobayashi has directly or indirectly violated Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)], and unless restrained and enjoined will continue to violate this provision.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court:

I.

Permanently enjoin defendant Kobayashi from directly or indirectly violating Sections 10(b) and 15(a) of the Exchange Act [15 U.S.C. § 78j(b) and 78o(a)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

II.

Order defendant Kobayashi to pay civil money penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1].

III.

Order defendant Kobayashi to disgorge all ill-gotten gains according to proof, plus prejudgment interest.

IV.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

V.

Grant such other and further relief as this Court may deem just, equitable, and necessary.

Dated: March 3, 2011

Respectfully submitted:

By: _____Susan Fleischmann_____
     Susan Fleischmann

Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION